UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIO GERARD BERNADEL, | CASE NO. 2:26-cv-01101-DGE |
| Petitioner, | ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) |
| v. | |
| PAMELA BONDI et al., | |
| Respondents. | |

This matter comes before the Court on Petitioner Mario Gerard Bernadel's amended petition for writ of habeas corpus. (Dkt. No. 10.) Having reviewed the petition, the return memorandum (Dkt. No. 15), Petitioner's traverse (Dkt. No. 33), and all supporting materials, the Court DENIES Petitioner's writ of habeas corpus.

## I    BACKGROUND

### A. Factual Background

Petitioner is a native and citizen of Haiti. (Dkt. Nos. 16 at 1; 17-1 at 2.) He was admitted to the United States as a lawful permanent resident in Miami, Florida, on or around August 24,

1969. (Dkt. No. 17-1 at 2.) On August 9, 2007, Petitioner was convicted of two counts of false declarations in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(3), in United States District Court for the District of Arizona. (Dkt. No. 17-6 at 2.) Petitioner was sentenced to a term of 33 months' custody for each count, with the sentences to run concurrently. (*Id.*) Petitioner was ordered to pay $86,409.30 in restitution. (*Id.*)

On March 16, 2010, in United States District Court for the District of Arizona, Petitioner was convicted of the following:

- Conspiracy to commit mail, wire, and bank fraud, in violation of 18 U.S.C. §§ 1349, 1341, 1343, and 1344;

- Six counts of mail fraud, in violation of 18 U.S.C. § 1341;

- Seven counts of wire fraud, in violation of 18 U.S.C. § 1343;

- Four counts of transactional money laundering, in violation of 18 U.S.C. § 1957(a), (b)(1)–(2); and

- Bank fraud in violation of 18 U.S.C. § 1344.

(*Id.* at 6.) The crimes "did not arise out of a single scheme of criminal misconduct." (Dkt. No. 17-1 at 5.) Petitioner was sentenced to a total of 200 months' custody for all combined convictions, to be served concurrently, as well as assessed a monetary penalty of $26,900. (Dkt. No. 17-6 at 6–7.) Petitioner notes in his traverse that he served a total of 230 months but maintains his innocence. (Dkt. No. 33 at 2.)

On July 15, 2024, Petitioner asserts he was "released from incarceration and discharged from custody and all proposed liability of the U.S. Marshal Service [and] the U.S Department of Justice[.]" (Dkt. No. 33 at 3.) According to Respondents, Petitioner was arrested on July 15 by Immigration and Customs Enforcement ("ICE") at an Amtrak/Greyhound station in Carbondale,

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 2

Illinois.  (Dkt. No. 17-4 at 3.)  He was apparently the "target of a field operation" after he had been released from the Bureau of Prisons ("BOP") and BOP was "unable to turn [Petitioner] over to ICE on the detainer."  (*Id.*)  At the time of his arrest, Petitioner was apparently on his way to a halfway house placement in Flagstaff, Arizona.  (Dkt. No. 33 at 3.)  Upon his arrest, Petitioner was transported to the ICE office in Saint Louis where he "expressed fear of returning to Haiti."  (Dkt. No. 16 at 2.)  He was then released to BOP to complete his sentence at the halfway house in Flagstaff.[1]  (*Id.*; Dkt. No. 17-4 at 3.)

On November 14, 2024, ICE encountered Petitioner at the BOP halfway house upon finishing his sentence.  (Dkt. No. 17-4 at 3.)  He was taken into immigration custody and brought to the ICE office in Phoenix for processing.  (Dkt. Nos. 16 at 2; 17-2 at 2–3.)  That same day, Petitioner was served with a Notice to Appear ("NTA") charging him as removable under INA § 237(a)(2)(A)(ii) and (iii), codified at 8 U.S.C. § 1227.  (Dkt. No. 16 at 3.)  He was transferred to the Florence, Arizona Service Processing Center.  (*Id.*)  On November 27, 2024, Petitioner appeared for a bond hearing before the Florence Immigration Court but withdrew his bond request during that hearing.  (Dkt. No. 17-7 at 2.)

On December 27, 2024, the Department of Homeland Security ("DHS") filed a notice of *Franco-Gonzales* class membership, "alleging that Petitioner may not be competent to represent himself and is potentially" a class member.[2]  (Dkt. No. 16 at 3.)  DHS apparently asked the

---

[1] According to Petitioner, in the middle of the night on July 17, 2024, he was released and discharged from ICE custody and taken to a Greyhound bus terminal in St. Louis.  (Dkt. No. 33 at 3.)  He asserts he was informed by ICE agents "he did not have to worry about additional developments from ICE" and that he had been "cleared by ICE" in Washington, D.C.  (*Id.*)

[2] *See Franco-Gonzales v. Napolitano*, Case No. CV 10–02211 DMG (DTBx), 2011 WL 11705815, at *16 (C.D. Cal. Nov. 21, 2011) (certifying a plaintiff class as "[a]ll individuals who are or will be in DHS custody for removal proceedings in California, Arizona, and Washington who have been identified by or to medical personnel, DHS, or an Immigration Judge, as having a

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 3

immigration court to schedule a new bond hearing for Petitioner given his possible class membership. (*Id.*) On January 22, 2025, Petitioner appeared for a second bond hearing before the Florence Immigration Court; the immigration judge denied Petitioner's request for bond, finding that he remained subject to mandatory detention.[3] (Dkt. No. 17-8 at 2.) Petitioner appealed the immigration judge's bond decision, and the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on June 9, 2025. (Dkt. No. 17-9 at 2–3.) Petitioner filed a petition for review of the denial of his bond request with the Ninth Circuit. *See Bernadel v. Bondi*, Case No. 25-4080 (9th Cir. July 1, 2025), Dkt. No. 1. The Ninth Circuit dismissed the petition for review on July 17, 2025. *Id.*, Dkt. No. 9.

On March 24, 2025, during the pendency of these proceedings, Petitioner was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains detained today. (Dkt. No. 16 at 3.) Petitioner then appeared for a *Franco-Gonzales* bond hearing on May 15, 2025. (Dkt. No. 17-10 at 2.) The immigration judge denied bond because Petitioner was a flight risk, based in part on his convictions in a "complex scheme involving fraud and money laundering related to real estate schemes." (Dkt. No. 17-11 at 6.) Petitioner again appealed the immigration judge's decision, and on September 23, 2025, the BIA affirmed the immigration judge. (Dkt. No. 17-12 at 2–3.) Petitioner filed a petition for review with the Ninth Circuit on October 7, 2025. *See Bernadel v. Bondi*, Case No. 25-6315 (9th Cir. Oct. 7,

---

serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings, and who presently lack counsel in their detention or removal proceedings[]").

[3] The immigration judge noted Petitioner's potential *Franco-Gonzales* class membership but stated the January 2025 bond hearing was not conducted "in accordance with the '*Franco*' line of cases" because Petitioner was not eligible for a *Franco-Gonzales* bond hearing until May 13, 2025. (Dkt. No. 17-8 at 2–3 n.1.)

2025), Dkt. No. 1.  The Ninth Circuit dismissed the petition for review on December 29, 2025.  *Id.*, Dkt. No. 18.

On July 15, 2025, Petitioner appeared with counsel at an individual hearing on the merits of his applications for relief from removal.  (*See* Dkt. No. 18 at 8.)[4]  Petitioner requested the attorney be withdrawn from the case; the immigration court granted this motion, and Petitioner proceeded pro se.  (*Id.*)  Following this hearing, Petitioner filed a renewed bond request, which was denied by an immigration judge on August 4, 2025, because Petitioner did not provide any "materially changed circumstances" pursuant to 8 C.F.R. § 1000.3.19(e).  (Dkt. No. 17-13 at 2.)  On August 20, 2025, the immigration judge issued a "comprehensive written decision" on Petitioner's removability, applications for relief from removal, claims of United States citizenship, and claims of indigenous ancestry.  (Dkt. Nos. 15 at 6; 18 at 4–18.)  Petitioner was ordered removed to Haiti.  (Dkt. No. 18 at 18.)  Petitioner appealed this decision to the BIA, and on November 17, 2025, the BIA dismissed Petitioner's appeal.  (Dkt. No. 17-5 at 2–4.)  Petitioner filed a petition for review with the Ninth Circuit, *see Bernadel v. Blanche*, Case No. 25-7590 (9th Cir. Dec. 3, 2025), Dkt. No. 1; on March 3, 2026, the Ninth Circuit granted a stay of removal and set the case for full briefing.  *Id.*, Dkt. No. 21; (*see also* Dkt. No. 16 at 4).

**B.  Procedural History**

Petitioner filed a proposed petition for writ of habeas corpus and application to proceed *in forma pauperis* ("IFP") on March 30, 2026.  (Dkt. No. 1.)  His IFP application was granted on

---

[4] Dkt. No. 18 was filed under seal because (1) it contains "highly sensitive and confidential information, including discussion of a psychological evaluation of Petitioner" in connection with his potential *Franco-Gonzales* class membership; and (2) it contains factual details surrounding Petitioner's underlying criminal convictions, "including the addresses of identifiable real property."  (Dkt. No. 14 at 2; *see also* Dkt. No. 19 (granting motion to file under seal).)  The Court refers only to the non-confidential information in Dkt. No. 18 to the extent necessary for this order.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 5

April 1, 2026 (Dkt. No. 3), but the Court ordered Petitioner to file an amended petition because his petition "include[d] no facts to support any of his causes of action."  (Dkt. No. 6 at 2.) Petitioner filed an amended petition on May 6, 2026.  (Dkt. No. 10.)

In his petition, Petitioner raises the following issues: "unlawful detention, false arrest, malicious prosecution, ineffective assistance of counsel, fraud upon the court, [and] bond redetermination."  (*Id.* at 2.)  He argues he was detained by ICE officials without procedural due process and that he has been detained longer than the 90 days authorized by statute.  (*Id.* at 3.) Respondents filed their return on May 26, 2026.  (Dkt. No. 15.)  They argue Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(c) following his release from federal criminal custody and further, his continued detention is compliant with Due Process.  (*Id.* at 1–2.)

On June 8, 2026, Petitioner filed a motion for extension of time to file his traverse.  (Dkt. No. 21.)  The Court granted this motion in part; it permitted Petitioner to file his traverse on June 29, 2026 to account for delays with mailing and receipt of documents at the NWIPC.  (Dkt. No. 23 at 1–2.)  However, it cautioned that Petitioner could not use his habeas petition as a collateral attack on his previous criminal conviction and accordingly denied Petitioner's request to add attorneys from the District of Arizona who do not have custody over Petitioner.  (*Id.* at 2.)

Initially, rather than file a traverse, Petitioner filed the following motions:

- "Motion for Protective Order to Seal Discovery Materials and Other" (Dkt. No. 24)
- "Ex Parte-Sealed Motion to Appoint Marshal to Serve Summons and Complaint" (Dkt. No. 26)
- "Motion for Service Summons Outside of State of Washington" (Dkt. No. 27)
- "Motion for Order Requiring Out-of-State Defendant to Appear and Answer" (Dkt. No. 28)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 6

- "Motion for Order Recognizing Service was Completed" (Dkt. No. 29)

- "Motion to Strike Affidavit of Gary Ingram" (Dkt. No. 31)

- "Motion to Strike Affidavit of Barbara Andrade" (Dkt. No. 32)

On July 6, 2026, Petitioner filed a "Writ of Habeas Corpus," which the Court construes as Petitioner's traverse.  (*See* Dkt. No. 33.)  This matter is now ripe for disposition.

## II    LEGAL STANDARD

### A. Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, Case No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, Case No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III    DISCUSSION

### A. Petitioner is Detained Subject to 8 U.S.C. § 1226(c)

8 U.S.C. § 1226 "generally governs the process of arresting and detaining [inadmissible noncitizens] pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).  § 1226 distinguishes between two different categories of noncitizens.  § 1226(a) sets out the "default

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 7

rule," *id.*: the Attorney General may issue a warrant for the arrest and detention of a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." "Except as provided in subsection (c) of this section," the Attorney General "may release" a noncitizen detained under § 1226(a) on "bond" or "conditional parole." 8 U.S.C. § 1226(a). However, under § 1226(c), the "Attorney General shall take into custody" any noncitizen who falls within one of the several enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Relevant here, § 1226(c)(1)(B) requires the Attorney General to take into custody any noncitizen who has committed any offense covered in 8 U.S.C. §§ 1227(a)(2)(A)(ii) and 1227(a)(2)(A)(iii). § 1227(a)(2)(A)(ii) applies to a noncitizen who "at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . regardless of whether the convictions were in a single trial[.]" § 1227(a)(2)(A)(iii) applies to a noncitizen "who is convicted of an aggravated felony at any time after admission[.]" The Attorney General may release noncitizens in these categories "*only if* the Attorney General decides" both that doing so is necessary for witness-protection purposes *and* that the noncitizen will not pose a danger or flight risk. § 1226(c)(2)(4) (emphasis added). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Id.*

After Petitioner's individual merits hearing, the immigration judge explained by written order that Petitioner had been convicted of an aggravated felony as defined by INA § 101(a)(43)(D), codified at 8 U.S.C. § 1101(a)(43)(D), which includes "an offense described in section 1956 of title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful

activity) if the amount of the funds exceeded $10,000[.]" (*See* Dkt. No. 18 at 9–10.) 18 U.S.C. § 1957 provides that a person has violated the statute if they "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]" The immigration judge examined the record and concluded it supported a finding that the amount at issue in Petitioner's case was over $10,000. (Dkt. No. 18 at 10.) The immigration judge also found that Petitioner was found guilty of an aggravated felony as defined by INA § 101(a)(43)(M), which includes "an offense that—(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or (ii) is described in section 7201 of title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000[.]" Again, the immigration judge examined the record and concluded that it established Petitioner had knowingly conspired with others to commit mail fraud, wire fraud, and bank fraud. (Dkt. No. 18 at 11–12.) Finally, the immigration judge concluded Petitioner had committed a crime of moral turpitude, which requires "'reprehensible conduct and a culpable mental state.'" (Dkt. No. 18 at 12) (quoting *Matter of Silva-Trevino*, 26 I. & N. 826, 834 (BIA 2016)). In the Ninth Circuit, crimes of moral turpitude include "'those involving fraud.'" (*Id.* at 13) (quoting *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2021)). The immigration judge examined the evidence and concluded Petitioner's criminal offenses involved intentional fraud. (*Id.*) In examining the record, the Court agrees with Respondents that Petitioner's convictions "fit squarely" within the enumerated bases for mandatory detention under § 1226(c)(1). (Dkt. No. 15 at 7.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 9

In his traverse, Petitioner raises for the first time that he is detained pursuant to 8 U.S.C. § 1231 rather than § 1226(c).[5] (Dkt. No. 33 at 10–16.) He argues that while he was originally detained pursuant to § 1226, the statutory basis shifted on June 11, 2025, when the immigration judge ordered him removed from the United States.[6] (Dkt. Nos. 18 at 18; 33 at 15.) A noncitizen's removal after they are ordered removed is governed by INA § 241, codified at 8 U.S.C. § 1231. The first 90-day period following the entry of the order of final removal is called the "removal period." *Id.* § 1231(a)(1)(A). The removal period begins, relevant here, on "[t]he date the order of removal becomes administratively final[,]" *id.* § 1231(a)(1)(B), which according to Petitioner was September 11, 2025. (Dkt. No. 33 at 15.)

---

[5] "A Traverse is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). "In order for the [government] to be properly advised of additional claims, they should be presented in an amended petition, or . . . in a statement of additional grounds." *Cacoperdo*, 37 F.3d at 507. Nevertheless, a district court "has discretion, but is not required to" consider evidence and claims raised for the first time after the filing of the petition. *Brown v. Roe*, 279 F.3d 742, 745 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). This includes new claims raised by a petitioner in the traverse. *See, e.g.*, *Jackson v. Roe*, 425 F.3d 654, 655 n.1 (9th Cir. 2005) (noting magistrate judge's consideration of a new claim raised for first time in traverse). Here, although Petitioner challenges the statutory basis for his detention for the first time in his reply, the issue was fully briefed by Respondents. (*See* Dkt. No. 15 at 7–8) (discussing § 1226(c)). In the interests of justice and in deciding this petition on the merits, the Court will consider the arguments in Petitioner's traverse despite the fact they were not initially raised in his amended habeas petition.

[6] Petitioner argues he was ordered removed from the United States on or around June 11, 2025 and that his order of removal became administratively final on September 11, 2025. (Dkt. No. 33 at 15.) But the Court notes that the only order currently on appeal is the immigration court order issued on August 20, 2025, which ordered Petitioner removed to Haiti and denied his applications for asylum, withholding of removal, and Convention Against Torture claims. (*See* Dkt. No. 18 at 18); *see also* Case No. 25-7590. Regardless of the exact dates of when Petitioner was ordered removed, however, his detention is mandated by § 1226(c) because his order of removal has not yet become administratively final. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 10

Though Petitioner argues otherwise, the Court agrees with Respondents that Petitioner is detained pursuant to § 1226(c). It is true that Petitioner was ordered removed to Haiti in August (Dkt. No. 18 at 18)—however, he immediately appealed that order to the BIA, and after that appeal was dismissed, to the Ninth Circuit. (Dkt. Nos. 16 at 4; 17-5 at 2–4); Case No. 25-7590, Dkt. No. 1. On March 3, 2026, the Ninth Circuit granted a stay of removal and set the case for full briefing. Case No. 25-7590, Dkt. No. 21.

Petitioner's petition for review and appellate briefing before the Ninth Circuit make clear Petitioner challenges the August 20, 2025 removal order in its entirety.[7] He identifies issues for which review is sought, including whether "the BIA erred in finding the Appellant deportable" and whether the "BIA abuse[d] its discretion in finding the Appellant Deportable." Case No. 25-7590, Dkt. No. 1 at 3–4. Both his opening brief and reply brief argue the immigration judge erred in ordering his removal. *Id*., Dkt. Nos. 23, 27.

Notwithstanding, in the instant proceedings, Petitioner asserts that on appeal he "is challenging the factual basis and improper application of law to a denial of [his Convention Against Torture Act] protection claim" only and that he "is not challenging his removal order[.]" (Dkt. No. 33 at 18.) Petitioner's characterization of his appeal is clearly not true.

§ 1231 "makes clear that when a court of appeals issues a stay of removal pending its decision on an alien's petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal." *Prieto-Romero v. Clark*, 534 F.3d at 1059. "[T]he plain language of § 1231(a) provides no authority to detain aliens . . . whose removal order is *administratively*—but not judicially—final." *Id*. at 1060.

---

[7] The Court takes judicial notice of the docket and filings in Case No. 25-7590 because they contain information that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 11

Here, because Petitioner's stay of removal is in place until the Ninth Circuit renders a decision in his appellate case and issues a mandate, Petitioner's order of removal is not administratively final pursuant to § 1231. Accordingly, he remains detained subject to § 1226(c).

**B. Petitioner's Re-Detention in November 2024 Did Not Violate Due Process**

In his habeas petition, Petitioner argues his re-detention violated his Due Process protections under the framework laid out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (Dkt. No. 10 at 3.) *Mathews* "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). *Mathews* employs a three-factor test examining (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest." 424 U.S. at 335.

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." *Id.* Federal courts have continually recognized an immigration detainee's private interest in freedom from imprisonment. *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). An individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention. *E.g.*, *Makuey v. Scott*, Case No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding Petitioner "has now been

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 12

undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release into the community).

Under § 1226(c)(1)(E)(ii), the Attorney General shall take a noncitizen into custody "when the [noncitizen] is released" from criminal custody.  DHS is required to "effectively and expeditiously" take custody of the noncitizen if they are not otherwise detained following their release.  *Id.* § 1226(c)(3).  The Supreme Court has held that the mandatory detention provision of § 1226(c) applies "even where the non-citizen subject to that detention is not arrested and detained immediately following their release from custody on criminal charges." *Perera v. Jennings*, 598 F. Supp. 3d 736, 743 (N.D. Cal. 2022) (citing *Nielsen v. Preap*, 586 U.S. 392, 396 (2019)).  However, even individuals subject to detention under § 1226(c) "have a protected interest in remaining at liberty even though section 1226(c) detention is mandatory." *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1039 (N.D. Cal. 2025).

Here, Petitioner was first arrested by ICE officials on July 15, 2024 after release from a BOP detention facility.  (Dkt. No. 17-4 at 3.)  An ICE detainer and immigration warrant had been issued and filed with BOP, but BOP was "unable to turn [Petitioner] over" to ICE pursuant to the detainer.  (*Id.*)  Petitioner was then released from ICE custody to a BOP halfway house in Flagstaff, Arizona to complete his custody sentence.[8]  (*Id.*)  Petitioner was subsequently arrested at the halfway house and transported into ICE custody in Phoenix after completing his custody sentence.  (Dkt. Nos. 17-2 at 2–3; 17-4 at 3.)  The record, therefore, establishes that Petitioner's detention in July 2024 occurred while Petitioner was in transit to the halfway house to complete

---

[8] BOP is authorized to allow eligible prisoners to complete a custody sentence at a "halfway house," otherwise known as a residential reentry center or "community correctional facility," to assist in their transition into the community.  The prisoner, however, remains in the custody of BOP while at the halfway house.  *See* 18 U.S.C. § 3624(c) (allowing for prerelease custody to a "community correctional facility").

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 13

his BOP custody term.  In other words, when ICE detained Petitioner in November 2024, Petitioner had been in continuous BOP custody before he was directly transferred to ICE.

Despite continuous custody, Petitioner retained a liberty interest after completing his BOP custody term.  *Accord Perera*, 598 F. Supp. 3d at 744 (finding the petitioner had a protected liberty interest after he was released from federal custody into a period of supervised release, despite being subject to an immigration detainer).  That said, his various criminal convictions in the prior two decades "significantly reduced" his liberty interest.  *Sedrakyan v. Semaia*, Case No. EDCV 26-3154-AS, 2026 WL 1894451, at *4 (C.D. Cal. June 30, 2026).

    2.  Risk of Erroneous Deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]"  424 U.S. at 335.

Here, the risk of the erroneous deprivation of Petitioner's liberty interest is relatively low, because Petitioner was subject to an ICE detainer following his release from BOP custody and was only formally detained immediately upon the completion of his BOP custody term.  Put differently, the fact Petitioner would be taken directly into ICE custody was "easily ascertainable" at the time of his release from BOP custody.  *Sedrakyan*, 2026 WL 1894451, at *4; *see also* §§ 1226(c)(1)(E)(ii), 1226(c)(3).  Further, as detailed above, Petitioner was provided with two post-detention bond hearings (*see* Dkt. Nos. 17-8 at 2; 17-10 at 2), which afforded him "adequate procedural safeguards."  *E.g.*, *Aguilar v. Semaia*, Case No. 5:26-cv-00023-MCS-SSC, 2026 WL 166906, at *5 (C.D. Cal. Jan. 16, 2026) (finding risk of erroneous deprivation low when the petitioner received a post-deprivation bond hearing and was appointed counsel).

### 3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

The Government "clearly has a strong interest in preventing [noncitizens] from 'remaining in the United States in violation of our law.'"  *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003)) (internal alterations omitted).  Further, the Government "has an obvious interest in 'protecting the public from dangerous criminal aliens.'"  *Id.* (quoting *Demore*, 538 U.S. at 515 (discussing justifications for mandatory detention policy in § 1226(c))).  Here, Petitioner's criminal history, which led to his charge of removability, further legitimizes the Government's interest in ensuring Petitioner's appearance at future immigration proceedings.  *See Demore*, 538 U.S. at 515, 518–520 (discussing the importance of the presence of noncitizens with criminal convictions at their removal proceedings).

On balance, the *Mathews* factors suggest Petitioner was not entitled to any pre-deprivation process because his criminal history and the ICE detainer sufficed as grounds for detention.

## C.  Petitioner's Detention Is Not Unconstitutionally Prolonged[9]

"Since *Demore*, courts have found that a noncitizen's detention, even if mandatory under 8 U.S.C. § 1226(c), can still be unlawful if it is unreasonably prolonged under the Due

---

[9] Petitioner argues in reply that he is subject to the Due Process analysis laid out in *Zadvydas*. (Dkt. No. 33 at 21–32, 39–40.)  But *Zadvydas* applies only to noncitizens subject to a final order of removal pursuant to § 1231.  The Court has already found that Petitioner's order of removal is not yet final.  *See* Section III(A) *supra*.  The Court will therefore apply the relevant Due Process analysis for claims of unconstitutional prolonged detention under the mandatory detention provision in § 1226(c).

Process Clause." *Smbat v. ICE Field Off. Dir.*, Case No. 2:26-cv-00818-JHC, 2026 WL 1842663, at *2 (W.D. Wash. June 26, 2026) (collecting cases). In this district, courts apply the test from *Martinez v. Clark*, Case No. C18-1669-RAJ-MAT, 2019 WL 5968089 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019), which considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Martinez*, 2019 WL 5968089, at *6–7. The Court takes each in turn.

### 1. Length of Detention

The length of detention is the "most important factor[.]" *Martinez*, 2019 WL 5968089, at *9. "'Under this factor, the longer mandatory detention continues under 8 U.S.C. § 1226(c) beyond the "brief" period authorized in *Demore*, the harder it becomes to justify without conducting an individualized bond hearing.'" *Smbat*, 2026 WL 1842663, at *3 (quoting *Sarr v. Scott*, 765 F. Supp. 3d 1091, 1098 (W.D. Wash. 2025) (Mem.) (adopting report and recommendation). There is no "bright-line rule" for when detention becomes unreasonable. *See Sarr*, 765 F. Supp. 3d at 1098 (citing *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 964–965 (D. Minn. 2019)). In this case, Petitioner has been detained for more than 19 months. (Dkt. No. 17-4 at 3) (Petitioner taken into ICE custody in November 2024). Other courts have found similar durations of detention to weigh in favor of the petitioner. *See Smbat*, 2026 WL 1842663, at *3 (20-month detention); *Martinez*, 2019 WL 5968089, at *9 (13-month detention); *Sarr*, 765 F. Supp. 3d at 1098 (21-month detention). However, Petitioner

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 16

received a bond hearing in January 2025 and a second one most recently in May 2025 (Dkt. Nos. 17-8 at 2; 17-10 at 2), which in the Court's mind, slightly weakens a finding in favor of Petitioner on this factor. Nevertheless, the Court acknowledges Petitioner's interest in the speedy adjudication of his immigration proceedings and concludes the first factor weighs in his favor.

### 2.    Likely Duration of Future Detention

Next, the Court "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. As of March 2026, Petitioner has a stay of removal pending before the Ninth Circuit. *See* Case No. 25-7590, Dkt. No. 21; (Dkt. No. 16 at 4). At least one court in this district has observed that an appeal before the Ninth Circuit could take at least two years from the initiation of the case. *See Juarez v. Wolf*, Case No. C20-1660-RJB-MLP, 2021 WL 2323436, at *5 (W.D. Wash. May 5, 2021), *report and recommendation adopted*, 2021 WL 2322823 (W.D. Wash. June 7, 2021); *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019). However, any prediction on the timeframe of an appeal is somewhat speculative; accordingly, the Court finds the second *Martinez* factor is neutral.

### 3.    Criminal History

"Under the third and fourth factors, the Court reviews the length of civil detention compared to Petitioner's criminal sentence, and the nature of his crime." *Smbat*, 2026 WL 1842663, at *3. These factors are "suggestive of whether [Petitioner] is a danger to the community or a risk of flight[.]" *Juarez*, 2021 WL 2323436, at *5. Here, Petitioner was sentenced to a total of 233 months in prison for various fraud and conspiracy felonies. (Dkt. No.

17-6 at 2, 6.)  It is not possible, or is at least extremely unlikely, that Petitioner's immigration detention will match or exceed the length of time he spent in prison for a long while.  Further, the fact Petitioner was convicted of several serious felonies tilts this factor in favor of the Government.  Added to this is Petitioner's misleading argument before this Court that his appeal at the Ninth Circuit only involves an appeal of the denial of his Convention Against Torture claim and is not an appeal of his removal order.  *Cf.* Case No. 25-7590, Dkt. No. 1.  Petitioner's lack of candor, together with his criminal history, raises concerns about his potential flight risk.

### 4.  Conditions of Detention

"'The more that the conditions under which the [non-citizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing.'"  *Juarez*, 2021 WL 2323436, at *6 (citation and alterations omitted).  Petitioner has provided no facts as to the conditions of his detention other than a general contention that his detention has become indefinite.  (*See* Dkt. No. 10 at 3.)  That said, other courts in this district have characterized the conditions at NWIPC as "'that of a prison[.]'"  *Smbat*, 2026 WL 1842663, at *4 (quoting *Shevchuk v. Scott*, Case No. 2:26-CV-01408-SAB, 2026 WL 1413609, at *2 (W.D. Wash. May 20, 2026) and collecting cases).  This factor is therefore neutral.

### 5.  Delays in Removal Proceedings

Under the sixth and seventh factors, the Court considers "the nature and extent of any delays in the removal proceedings caused by petitioner and the government, respectively."  *Martinez*, 2019 WL 5968089, at *10.  "'Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.'"  *Juarez*, 2021 WL 2323436, at *6 (quoting *Liban M.J.*, 367 F. Supp. 3d at 665 (internal citation omitted)).  "[T]his factor weighs against finding detention unreasonable

when a non-citizen 'has substantially prolonged his stay by abusing the processes provided,' but not when he 'simply made use of the statutorily permitted appeals process.'" *Id.* at \*7 (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (internal citations and quotation marks omitted).

Here, there is some evidence of delay caused by Petitioner, because he appears to intend to collaterally attack his criminal convictions in Arizona through litigating his habeas petition. (*See* Dkt. No. 21 at 2) (requesting an extension of time to file a reply in order to serve the Assistant U.S. Attorneys involved in his criminal case). The Court has explicitly informed Petitioner he may not do so. (Dkt. No. 23 at 2) ("A habeas proceeding is not a vehicle for a collateral attack on a previous criminal conviction."). Nevertheless, Petitioner has filed various motions related to his criminal proceedings. (*See* Dkt. Nos. 24–32.)

Further, the BIA and Ninth Circuit have been relatively expeditious in considering Petitioner's appeals; since November 2024, the BIA has dismissed three appeals, and the Ninth Circuit has dismissed two petitions for review and has entered one stay of removal. (Dkt. Nos. 16 at 3–4; 17-5; 17-9; 17-10; 17-12); Case Nos. 25-4080; 25-6315; 25-7590. The Court cannot say there has been any kind of delay attributable to the Government in adjudicating Petitioner's case up to this point. *Cf. Smbat*, 2026 WL 1842663, at \*4 (finding delay caused by Government when an immigration judge took five years to deny the petitioner relief from removal and order him removed). The Court concludes these factors weigh in favor of the Government.

6. Likelihood of Final Order of Removal

"Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal." *Smbat*, 2026 WL 1842663, at \*5 (citing *Martinez*, 2019 WL 5968089, at \*10). "Where a noncitizen has not asserted any grounds for relief from removal, presumably

the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citations omitted). Here, an order of removal was imposed in August 2025 by an immigration judge after what appears to be a thorough review of Petitioner's claims for relief. (Dkt. No. 18 at 18.) Petitioner's appeal strategy seems to involve attempts to collaterally attack his numerous convictions, which likely will face many hurdles. Despite this, the Court concludes this factor is neutral. *See Juarez*, 2021 WL 2323436, at *7 ("Petitioner does, however, have a petition for review pending before the Ninth Circuit and this Court is unwilling to conclude, based on the record before it, that the appeal is frivolous or that Petitioner will not ultimately prevail.").

As explained above, two factors favor the Government, one factor favors Petitioner, and the remainder are neutral. The Court concludes that Petitioner's mandatory detention without a bond hearing remains reasonable and therefore, does not violate Due Process at this time.[10] The Court offers no comment on whether, at some point in the future, Petitioner's detention will become unconstitutionally indefinite.

---

[10] There may be a second basis for the denial of Petitioner's claim for relief premised on the Ninth Circuit's decision in *Prieto-Romero*. In that case, the petitioner argued his detention pursuant to § 1226(a) was indefinite because although he had been found removable by an immigration judge and the BIA, after seeking judicial relief from the order of removal, his removal was delayed. 534 F.3d at 1064. The court disagreed, holding that the petitioner "foreseeably remains *capable* of being removed—even if it has not yet finally been determined that he *should be* removed—and so the government retains an interest in 'assuring [his] presence at removal.'" *Id.* at 1065 (quoting *Zadvydas*, 533 U.S. at 699). Here, the Court assumes that if an uncertain end date does not render *discretionary* detention under § 1226(a) indefinite, the same would be true of detention under § 1226(c), which is statutorily mandated. Notwithstanding, regardless of whether the Court applies the reasoning from *Prieto-Romero* or the *Martinez* factors, it concludes that Petitioner's detention has not violated Due Process under the facts presented.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 20

### D. Petitioner's Pending Motions and Additional Claims for Relief

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). As noted, Petitioner may not use his habeas case to collaterally attack his underlying criminal convictions in the District of Arizona. Dkt. Nos. 26–29 are accordingly STRICKEN. Petitioner's motion for protective order (Dkt. No. 24) and motions to strike the declarations of Gary Ingram and Barbara Andrade (Dkt. Nos. 31, 32) are DENIED as moot.

Finally, Petitioner challenges ICE's third country removal policy in his traverse and argues Respondents may not subject him to third country removal. (*See* Dkt. No. 33 at 41–43, 46–47.) However, there is no evidence in the record that indicates ICE is attempting to remove Petitioner to anywhere other than Haiti at this time. Should ICE attempt to remove Petitioner to a third country in the future, Petitioner may raise such an argument in a *new* habeas petition if he believes he can satisfy his burden under the applicable legal standards.

### IV    CONCLUSION

Petitioner's amended petition for writ of habeas corpus (Dkt. No. 10) is DENIED. Dkt. Nos. 26–29 are STRICKEN. Petitioner's motion for protective order (Dkt. No. 24) and motions to strike the declarations of Gary Ingram and Barbara Andrade (Dkt. Nos. 31, 32) are DENIED as moot.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 10) - 21

Dated this 9th day of July 2026.

David G. Estudillo
United States District Judge